UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JOHN M.,                                 )
                                         )
            Plaintiff                    )
                                         )
v.                                       )    No. 1:17-cv-00452-JHR
                                         )
NANCY A. BERRYHILL,                      )
*Acting Commissioner of Social Security,*)
                                         )
            Defendant                    )

## MEMORANDUM DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing past relevant work as a collector and a customer service representative. The plaintiff seeks remand on the bases that, in determining his residual functional capacity ("RFC"), the ALJ erroneously (i) discounted two treating provider opinions, those of treating nurse practitioner Melissa C. Hackett, F.N.P.-C., co-signed by treating physician Linda Hermans, M.D., and treating nurse practitioner Meneah R. Haworth, F.N.P., (ii) gave great weight to the opinion of an agency nonexamining consultant, Jonathan Jaffe, M.D., and (iii) ignored a finding by the State of Maine Department of Labor ("DOL"), Bureau of Rehabilitation Services, that he was significantly

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 19.

disabled. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 13) at 3-15.[2] I find no error and, accordingly, affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2019, Finding 1, Record at 12; that he had the severe impairments of congestive heart failure, hypertension, diabetes mellitus, and obesity, Finding 3, *id.*; that he had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he could stand and/or walk for about two hours in an eight-hour workday and had additional postural and environmental limitations, Finding 5, *id.* at 14; that he was capable of performing past relevant work as a collector and a customer service representative, neither of which required the performance of work precluded by his RFC, Finding 6, *id.* at 18; and that he, therefore, was not disabled from June 5, 2014, his alleged onset date of disability, through October 20, 2016, the date of the decision, Finding 7, *id.* at 19. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the

---

[2] The plaintiff also argues in passing that the ALJ erred in (i) deeming his sleep apnea and degenerative changes of the lumbar spine nonsevere, (ii) failing, in determining his RFC, to consider the combined effect of all of his impairments, including those she deemed nonsevere, (iii) finding him capable of past relevant work, and (iv) concluding that he was not disabled. *See* Statement of Errors at 3-6. Because, in pressing those points, the plaintiff relies on his arguments challenging the ALJ's RFC determination, *see id.* at 4-15, I have not separately addressed them.

2

conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service Rulings 1975-1982*, at 813.

## I. Discussion

### A. ALJ's Weighing of Expert Opinions of Record

The ALJ explained that she gave the January 7, 2016, opinion of Dr. Jaffe "great weight" because it was "consistent with the [plaintiff]'s impairments, his conservative treatment, his positive response to that treatment, and his activities of daily living." Record at 17; *see also id*. at 94-99.

The ALJ gave "little weight" to the June 25, 2015, opinion of FNP Haworth, who had indicated, *inter alia*, that the plaintiff could not walk a city block, could sit or stand/walk for less than two hours in an eight-hour workday, would require the option to shift at will from sitting, standing, or walking, would often require unscheduled breaks throughout a workday, could never lift or carry any weight, could never twist, had significant limitations in repetitive reaching, handling, or fingering that FNP Haworth had been unable to evaluate, and was likely to be absent from work for more than four days per month. *See id*. at 17-18, 277-79.[3] The ALJ explained that

---

[3] The Haworth opinion is co-signed by Elizabeth Ruderberg, D.O. *See* Record at 279. In his brief, the plaintiff described Dr. Ruderberg as a treating physician, *see* Statement of Errors at 4; however, at oral argument, his counsel

3

she found that "the evidence of record, including the [plaintiff]'s own reports to his doctors that he can walk at least a quarter of a mile, as well as his activities of daily living such as volunteering 20 hours per week, do not support a finding that the [plaintiff] is this limited." *Id*. at 18. She added, "Likewise, the [plaintiff]'s routine and conservative treatment is not indicative of limitations as severe as those outlined by [FNP] Haworth in her opinion." *Id*.

Finally, the ALJ gave "little weight" to the June 23, 2016, opinion of FNP Hackett/Dr. Hermans that the plaintiff could lift and/or carry less than 10 pounds occasionally, could never lift frequently, could stand and/or walk for less than two hours in an eight-hour workday, needed to periodically alternate between sitting and standing, could not consistently push or pull with his upper or lower extremities bilaterally, could never climb, kneel, crouch, crawl, or stoop, could only occasionally balance, could reach, finger, and feel for less than two-and-a-half hours a day, and had limitations in his ability to tolerate temperature extremes, dust, vibration, humidity, wetness, hazards, and pulmonary irritants. *Id*. at 18, 422-25. The ALJ explained that this opinion was "unreasonably restrictive given the [plaintiff]'s activities of daily living (including volunteer work, shopping, and driving), as well as his reports to his doctors of improvement with conservative treatment." *Id*. at 18.

### 1. Hackett/Hermans and Haworth Opinions

The plaintiff contends, and the commissioner does not contest, that the Hackett/Hermans opinion qualifies as that of a treating physician, Dr. Hermans. *See* Statement of Errors at 6; Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 15) at 4-6.

---

acknowledged that there is no other mention of record of Dr. Ruderberg. The ALJ, hence, properly characterized the opinion as that of FNP Haworth. *Compare, e.g.*, *Rolfe v. Astrue*, Civil No. 10-06-B-W, 2010 WL 4456860, at *3 (D. Me. Oct. 31, 2010) (rec. dec., *aff'd* Nov. 18, 2010) (opinion was properly considered that of a treating physician when physician who countersigned it supervised nurse practitioner who authored it); *Miller v. Astrue*, Civil No. 09-156-B-W, 2010 WL 1935752, at *2 (D. Me. May 10, 2010) (rec. dec., *aff'd* May 28, 2010) (opinion was properly considered that of a treating physician when physician who countersigned it had treated claimant).

The ALJ, accordingly, was obliged to supply "good reasons" for the weighing of that opinion. *See, e.g.*, 20 C.F.R. §§ 404.1527(a)(2) (defining a "treating source" as "your own acceptable medical source who provides you, or has provided you, with medical treatment and evaluation and who has, or has had, an ongoing treatment relationship with you"), 404.1527(c)(2) (stating, "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.").

As the commissioner notes, *see* Opposition at 3-4 & n.1, FNP Haworth did not qualify as a "treating source" pursuant to the regulations in place at the time of the ALJ's decision, *see* 20 C.F.R. §§ 404.1502(a)(7), 404.1513(a)(2), 404.1527(a)(2).[4] The ALJ, thus, was not required to supply "good reasons" for the weight given to her opinion. *See, e.g., King v. Astrue*, Civil No. 09-337-P-H, 2010 WL 4457447, at *4 (D. Me. Oct. 31, 2010) (rec. dec., *aff'd* Nov. 22, 2010) (ALJ not expressly required to supply "good reasons" for discounting the opinion of a source who is not an acceptable medical source). Instead, the ALJ was obliged only to "explain the weight given to" her opinion "or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow [her] reasoning[.]" Social Security Ruling 06-03p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2018) ("SSR 06-03p"), at 331.[5] The ALJ's discussion satisfied that obligation here.

In any event, the ALJ supplied good reasons for according little weight to both the Hackett/Hermans and Haworth opinions: that each was unreasonably restrictive in view of the plaintiff's activities of daily living and reports to his doctors of improvement with conservative

---

[4] With respect to claims filed on or after March 27, 2017, the commissioner has recognized several additional categories of practitioners, including nurse practitioners, as "acceptable medical sources." 20 C.F.R. § 404.1502(a)(7).
[5] The commissioner has rescinded SSR 06-03p with respect to claims filed on or after March 27, 2017. *See* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263, 15263 (Mar. 27, 2017).

5

treatment. *See* Record at 17-18. "[I]nconsistency with other substantial evidence of record [is a] well-recognized bas[i]s for affording a treating source's medical opinion little or no weight." *Campagna v. Berryhill*, No. 2:16-cv-00521-JDL, 2017 WL 5037463, at *4 (D. Me. Nov. 3, 2017) (rec. dec., *aff'd* Jan. 2, 2018).

The plaintiff, nonetheless, contends that the ALJ erred in according the Hackett/Hermans and Haworth opinions little weight because the opinion of a treating source generally is entitled to greater weight than that of a nonexamining source and because, unlike Dr. Jaffe, FNP Hackett, Dr. Hermans, and FNP Haworth accounted for his back pain in assessing limitations. *See* Statement of Errors at 5-8. At oral argument, his counsel elaborated that Dr. Jaffe lacked the benefit of review not only of the Hackett/Hermans and Haworth opinions but also of evidence of worsening back pain following the plaintiff's 16-day hospitalization in February 2016 for cellulitis and sepsis.[6] She noted that this later evidence was available to FNP Hackett and Dr. Hermans. Finally, she asserted that the ALJ's reliance on both the plaintiff's activities of daily living and conservative treatment was misplaced.

For the reasons discussed below, I find no error in the ALJ's reliance on the Jaffe opinion. Nor do I find error in her reliance on the plaintiff's activities of daily living and conservative treatment.

At oral argument, the plaintiff's counsel contended that the plaintiff's activities of daily living did not support a conclusion that he was capable of full-time work, noting that he testified that he would be exhausted and need to nap after volunteering part-time at an elementary school and that he would sit down at the grocery store while his wife waited in the checkout line. She

---

[6] The plaintiff testified that, following his discharge from the hospital, he had a wake-up call to get his health in order, managing to lose 79 pounds between then and his August 2016 hearing. *See* Record at 35-36. However, he testified that, despite his weight loss, his back pain continued to increase. *See id.* at 55.

6

added that an ability to drive does not suggest a capacity to work full-time absent evidence that a claimant is driving long distances for many hours, which is not the case here.

Nonetheless, the ALJ did not rely on the plaintiff's activities to demonstrate an ability to perform full-time work. Rather, she deemed the Hackett/Hermans and Haworth opinions unduly restrictive in view of his ability to perform those activities. She had elsewhere noted that the plaintiff had stated that he volunteered for 20 hours a week in schools as a foster grandparent to help children with their academic performance, could lift and carry 10 to 15 pounds and walk for a quarter of a mile, and, on a typical day, would go to school, spend time with the children, and have lunch with them, drive his wife to work, nap, do light housework such as laundry and washing dishes, prepare dinner, pick his son up from school, serve dinner, and watch television until bedtime. *See* Record at 15. She reasonably viewed the Hackett/Hermans and Haworth opinions as unduly restrictive in view of these activities.

At oral argument, the plaintiff's counsel also asserted that the ALJ had erred in describing her client's condition as having improved with conservative treatment. She noted that, after a course of six physical therapy sessions from September 21, 2015, through October 30, 2015, the plaintiff's physical therapist stated that he had experienced only "[p]artial improvement" and had a "44% disability[.]" Record at 298. She added that the plaintiff had testified at hearing that physical therapy had helped only minimally, that he was not able to maintain the progress he had made, and that he experienced an increase in back pain after his hospitalization in February 2016, further limiting his mobility. *See id*. at 55-58. Finally, she acknowledged that, in June 2016, the plaintiff told his treating cardiologist, Lakshman Subrahmanyan, M.D., that he was "overall feeling much better[.]" *Id*. at 428. However, she asserted that he meant that he was feeling much better compared with when he was acutely ill and hospitalized with cellulitis.

7

Yet, the physical therapy record cited by the plaintiff's counsel reasonably can be read to support the ALJ's finding that the plaintiff's condition improved with treatment. *See id*. at 298 (noting that plaintiff stated that he was "very pleased with the functional improvements he ha[d] made with PT [physical therapy][,]" had less pain and fewer muscle spasms in his back, and was "able to tolerate walking longer distances and standing for longer periods of time without increased pain"). As counsel for the commissioner noted at oral argument, to the extent that the plaintiff relies on his testimony at hearing that his condition worsened, he has not separately challenged the ALJ's finding that his "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" *Id*. at 15. Finally, the ALJ accurately quoted the plaintiff's June 2016 statement to Dr. Subrahmanyan that he was "overall feeling much better[,]" *id*. at 16 (quoting *id*. at 428), and I perceive no reason why she could not simply take that statement at face value.

That a treating source's opinion is generally entitled to greater weight than that of a nonexamining source, *see* 20 C.F.R. § 404.1527(c)(2), does not, in itself, carry the day for the plaintiff, *see, e.g., Rodriguez*, 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts.").

The plaintiff, thus, falls short of demonstrating his entitlement to remand based on the ALJ's weighing of the Hackett/Hermans and Haworth opinions.

### 2. Jaffe Opinion

The plaintiff next asserts that the ALJ erred in relying on the Jaffe opinion because Dr. Jaffe did not "adequately consider (or consider at all) the substantial effects of the chronic back impairment[,]" did not consider his sleep apnea impairment, and failed to address whether

8

evidence submitted after Dr. Jaffe's report, including the Hackett/Hermans opinion, contradicted Dr. Jaffe's findings. Statement of Errors at 5, 7-8.

### a. Dr. Jaffe's Assessment of Plaintiff's Back Pain, Sleep Apnea

The plaintiff reasons that, because Dr. Jaffe did not assess whether his back pain or sleep apnea impairments were severe or nonsevere, he necessarily omitted them from his RFC analysis. *See id.* at 5. He adds that, although Dr. Jaffe gave a purported opinion of Dr. Subrahmanyan "controlling weight," Dr. Subrahmanyan did not assess his back pain or sleep apnea, either. *Id.* at 5 & n.1. He argues that, because the ALJ adopted the opinion of Dr. Jaffe, who ignored those impairments, and rejected the opinions of treating providers who addressed them, to that extent she impermissibly construed the raw medical evidence in assessing his RFC. *See id.* at 9-10; *see also, e.g.*, *Staples v. Astrue*, Civil No. 09-440-P-S, 2010 WL 2680527, at *5 (D. Me. June 29, 2010) (rec. dec., *aff'd* July 19, 2010) ("The First Circuit has held, and has reaffirmed on several occasions, that an [ALJ], as a layperson, is not qualified to assess RFC based on raw medical evidence, except to the extent that commonsense judgments regarding RFC can be made.") (citation omitted).

As the commissioner suggests, *see* Opposition at 7, Dr. Jaffe did not rely exclusively on Dr. Subrahmanyan. In his "Findings of Fact and Analysis of Evidence," he summarized medical evidence addressing the plaintiff's back impairment and sleep apnea, including the plaintiff's reports of lower back pain with difficulty standing for extended periods of time or walking. *See* Record at 94-95.[7] Moreover, as the commissioner notes, even up to the time of his hearing, the

---

[7] Dr. Jaffe reviewed an October 2015 x-ray of the plaintiff's lumbar spine that disclosed Grade 1 anterolisthesis at 4-5 without instability, a September 2015 sleep study documenting "sleep apnea of mild degree with severe exacerbation during REM [rapid eye movement] sleep[,]" medical records disclosing subjective complaints of pain and inability to stand for an extended period of time, and the plaintiff's statements concerning his activities of daily living. Record at 94-95.

9

plaintiff himself did not deem his back impairment "substantial enough to identify as one of his disabling impairments." Opposition at 6; Record at 209; *see also* Record at 45-50, 271-272.

Dr. Jaffe, hence, considered the plaintiff's back pain and sleep apnea to the extent documented in the records available for his review.

### b. Evidence Unseen by Dr. Jaffe

The plaintiff next contends that the ALJ erred in failing to consider whether evidence unseen by Dr. Jaffe undermined her reliance on his opinion. *See* Statement of Errors at 7-8. He asserts that both the Hackett/Hermans and Haworth opinions contradicted the Jaffe opinion. *See id*. At oral argument, the plaintiff's counsel added that Dr. Jaffe did not see evidence of her client's 2016 hospitalization and subsequent flare-up of back pain. She added that the plaintiff testified at hearing that, even though he lost weight following his hospitalization, his back pain was worse than ever, and he had started using a cane to provide support when he was not feeling steady on his feet. *See* Record at 55, 57.

"[T]he amount of weight that can properly be given the conclusions of non-testifying, nonexamining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert." *Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) (citations and internal quotation marks omitted). "In some cases, written reports submitted by nontestifying, nonexamining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule.") (citations and internal quotation marks omitted).

"This court has noted that there is no bright-line test of when reliance on a nonexamining expert consultant is permissible in determining a claimant's physical or mental RFC, although factors to be considered include the completeness of the consultant's review of the full record and whether portions of the record unseen by the consultant reflect material change or are merely

cumulative or consistent with the preexisting record and/or contain evidence supportably dismissed or minimized by the [ALJ]." *LaFlamme v. Colvin*, No. 1:14-cv-57-DBH, 2015 WL 519422, at *8 (D. Me. Feb. 6, 2015) (citation and internal punctuation omitted).

That Dr. Jaffe did not see the Hackett/Hermans and Haworth opinions does not undermine the ALJ's reliance on the Jaffe opinion because, as discussed above, the ALJ permissibly accorded them little weight on the basis that they were inconsistent with other substantial evidence of record. *See, e.g., Smith v. Berryhill*, No. 1:16-cv-00567-JHR, 2018 WL 1474528, at *6 (D. Me. Mar. 26, 2018) ("[A]n opinion of an agency nonexamining consultant who did not have the benefit of review of a treating source's later-submitted opinion may yet serve as substantial evidence of a claimant's RFC when the ALJ supportably rejects that treating source's opinion.") (citation omitted).

In a similar vein, the fact that Dr. Jaffe did not have the benefit of the plaintiff's reports of increased back pain following his 2016 hospitalization does not undermine the ALJ's reliance on the Jaffe opinion. The back impairment was not a new condition, *compare, e.g., Brackett v. Astrue*, No. 2:10-cv-24-DBH, 2010 WL 5467254, at *6 (De. Me. Dec. 29, 2010) (rec. dec., *aff'd* Jan. 19, 2011) (evidence unseen by agency nonexamining consultant was material when, *inter alia*, it supplied new diagnoses), and the plaintiff's subjective complaints of increased pain, standing alone, did not demonstrate a material change, *see, e.g., Desroches v. Colvin*, No. 2:14-cv-295-JHR, 2015 WL 1757127, at *7 (D. Me. Apr. 17, 2015) (evidence unseen by agency nonexamining consultant did not reflect a material change when treating doctor "continued to record the [claimant]'s ongoing subjective reports of severe symptoms together with normal to mild findings on mental status examination").[8]

---

[8] At oral argument, the plaintiff's counsel identified objective evidence of her client's back condition in the form of (i) a physical therapist's findings in September 2015 of increased thoracic kyphosis, or hunchback, increased lumbar

Beyond this, the ALJ acknowledged the plaintiff's June 2016 report of an increase in back pain, but noted that (i) his doctor had "encouraged stretching, strengthening, good posture, and proper body mechanics" and (ii) he had "not required any medication, injection, emergency room visit, hospitalization, or surgery for his back pain." Record at 13.

Further, as the commissioner's counsel noted at oral argument, the ALJ deemed the plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms . . . not entirely consistent with the medical evidence and other evidence in the record[,]" *id*. at 15, and the plaintiff has not separately challenged that finding.[9]

Finally, that Dr. Jaffe did not see records of the 2016 hospitalization does not undermine the ALJ's reliance on his opinion. The ALJ determined that, while the cellulitis and sepsis that led to the hospitalization were new, they constituted "an isolated incident . . . not expected to last 12 months" and were nonsevere. *Id*. at 13.

The plaintiff, hence, fails to demonstrate that the ALJ erred in according great weight to the Jaffe opinion or construed raw medical evidence with respect to his back impairment or sleep apnea in determining his RFC.[10]

---

lordosis, or excessive extension of the lumbar back, and an anterior tilt of the pelvis, with the plaintiff noted to walk at a swaying, slow pace with small, waddling steps, *see* Record at 299, (ii) an October 2015 x-ray showing facet arthritis and a Grade 1 anterolisthesis, *see id*. at 312, and (iii) a May 2016 examination again revealing moderate thoracic kyphosis, for which she supplied no record citation. As noted above, Dr. Jaffe summarized the results of the October 2015 x-ray. *See id*. at 94. The plaintiff's counsel did not argue that the September 2015 physical therapy finding was unavailable for Dr. Jaffe's review or that the May 2016 examination revealed a worsening of the plaintiff's thoracic kyphosis condition in the approximately seven months following the October 2015 x-ray. The plaintiff, hence, does not demonstrate that objective evidence unseen by Dr. Jaffe revealed a worsening back condition.

[9] The plaintiff cites *Alcantara v. Astrue*, 257 Fed. App'x 333, 334 (1st Cir. 2007), for the proposition that the ALJ's reliance on the Jaffe opinion was undermined by later-submitted evidence. *See* Statement of Errors at 6-7. *Alcantara* is materially distinguishable. In *Alcantara*, the agency nonexamining consultant considered no more than the first third of the record for the period of alleged disability, missing later-submitted evidence repeatedly indicating that the claimant had deteriorated with her parents' deaths. *See Alcantara*, 257 Fed. App'x at 334. In this case, Dr. Jaffe reviewed evidence spanning the majority of the disability period, and the evidence unseen by him did not reflect a material change, for the reasons discussed above.

[10] The plaintiff argues in passing that, even without considering the ALJ's handling of the treating source opinions, remand is warranted on the basis that her RFC determination is inherently contradictory. *See* Statement of Errors at 4-5. He contends that this is so because the ALJ deemed him capable of performing light work but limited him to standing for only about two hours per day, which is consistent with sedentary work. *See id*. This point is without

### B. ALJ's Failure To Discuss State DOL Report

The plaintiff also contends that the ALJ violated SSR 06-03p, which provides that a determination of disability by another governmental agency "cannot be ignored and must be considered[,]" SSR 06-03p at 332, when she ignored the DOL report deeming him "[s]ignificantly [d]isabled[,]" Statement of Errors at 8-9; Record at 270. He cites *Ferguson v. Berryhill*, No. 1:16-cv-00489-DBH, 2017 WL 2417849 (D. Me. June 4, 2017) (rec. dec., *aff'd* June 20, 2017), for the proposition that this omission warrants remand. *See* Statement of Errors at 9.

As the commissioner rejoins, *see* Opposition at 9-10, *Ferguson* is materially distinguishable. In *Ferguson*, this court noted that "the inclusion of evidence in a List of Exhibits creates a [rebuttable] presumption that an [ALJ] considered that evidence[,]" *Ferguson*, 2017 WL 2417849, at *4. In *Ferguson*, the presumption was rebutted when the ALJ "made a finding that she could not have made if she had carefully reviewed the earlier materials: that the plaintiff's testimony that he had a job coach when he was working was not reflected in the record." *Id.*

In this case, although the DOL report appears in the ALJ's List of Exhibits, creating a presumption that she considered it, *see* Record at 22, the plaintiff makes no attempt to rebut that presumption. The plaintiff, accordingly, fails to demonstrate his entitlement to remand based on this point of error.

### II. Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.

---

merit. As the commissioner rejoins, *see* Opposition at 8, a limitation to standing for only about two hours in an eight-hour day is consistent with the regulatory definition of light work, which "requires a good deal of walking or standing, or . . . involves sitting most of the time with some pushing and pulling of arm or leg controls[,]" 20 C.F.R. § 404.1567(b).

Dated this 30th day of November, 2018.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge